Five cases on the calendar this morning, patent case from district court, trademark case from the patent and trademark office, and three government employee appeals, two of which are being submitted on the briefs and therefore not argued. The first case is Monsanto Company v. Lauren David, 2009, 1078. Mr. Johnson. Thank you, Your Honor. My name is Bruce Johnson. I represent the defendant, appellant Lauren David in this case. The first thing I want to do is, uh, a pop is retract two sentences I wrote in page 17, or at least they're in my brief at page 17 and 18. And Judge Laurie at 516 F3rd in the first appeal in this case said that the contention that section 285 limits a fees that can be awarded under the contract is rejected. There are two sentences in my brief that basically contend the opposite. That is not the reason that I included the discussion of InterSpiral and Connelly in my brief. And at page 18, I explained what I was trying to do, which was I think that they are relevant to consider in tandem with the consideration of the reasoning in Farrar and City of Riverside. But I wish those sentences were not in my brief. Now, I shall, that is not my argument in this case. My argument in this case is based on proportionality. The fact that the principle that amounts of attorney's fees awarded in a statutory case should be reasonable in relation to the amount recovered. That is, you know, is based on the City of Riverside reasoning that was concurred in by three justices in the majority opinion and four justices who joined in Justice Rehnquist's dissent. It was one of the aspects of the relief that Monsanto got was an injunction, which is of unquantifiable value, but great value. It's a non-monetary benefit. That didn't change on remand, of course. It's a non-monetary benefit, yes, Your Honor, but it is of no value in this case. And it's really a fantasy for Monsanto to claim that that permanent injunction or temporary injunction that they obtained against this farmer in North Dakota, who they were the biggest seed company in the world, sued this fellow. It's a fantasy to contend that that adds any value to the mere fact that they sued him and spent $487,000 on this lawsuit. He is an end user. It does foreclose the possibility of continued infringement, does it not? He is an end user, Your Honor. He is not a manufacturer, supplier, competitor, which is what these patent cases are all about. Well, the district court found that he had caused $80-some-odd-thousand worth of damages in this case. The district court found that the value of the benefits that David obtained, based on expert testimony, was $86,000. Their own expert's testimony showed that the money that David saved was $18,000. But David, it is uncontested. They never planned that David save seed in any year but 2003 and planted it. They tested in 2004 and they admitted that he didn't save any seed in 2004. He never violated the temporary injunction. As soon as it was issued in April of 2004, when they sued this case, he canceled his Roundup Ready soybean order with Red River Grain. He has never violated the permanent injunction. And as soon as they sued David, he was put on the Monsanto no-sale dealers list. Monsanto has a dealers list. If there was no injunction, Lorne David couldn't buy seed for any purpose or anywhere. You're arguing costs and attorney fees here, right? Yes. Did you argue that on remand at the district court? No, I did not. And Monsanto says, well, I've waived my argument. The district court is constrained by this court's mandate in David 1. The district court, if you don't tell the district court to revisit attorney fees, the district court has no authority to do it. This court must revisit the issue in light of an important new fact. You knew the royalty was going to be diminished. I'm sorry? You knew the royalty was going to be diminished. Yes. And you're arguing now that attorney fees and costs should be proportional to the royalty. And so you had an argument. Didn't it make sense to argue that? I mean, that's your argument, the proportionality. So lowering the royalty, certainly according to your argument, would mean that costs should be lowered. Well, I just read the court's mandate. And I knew the law of mandate. And I checked it. And even where the mandate is erroneous, the case I cited in my brief where the mandate should have required the district court to add pre-judgment or post-judgment interest, but it failed to do so. And the mandate was in violation of law. I can't remember what the circuit court was. It still held that the district court had no authority to enter the post-judgment interest because it was constrained by the mandate. I mean, I don't know. It just didn't make sense to me to ask the district court to do something that was beyond the breadth of the mandate. Now, the reduction in this case from $226,000 to $87,000, it's a very stark change in facts. And I don't know that I can add anything to my brief on what I believe to be the controlling precedent in this case, which is City of Riverside and Farrar. And I do not think that because this is a patent case where there's a willful violation, where a willful violation has been held, that we can throw out the reasoning and that precedent and say it shouldn't be considered. Let me add one more point and then I want to sit down. There's never been a filing by Monsanto. There's only three findings of misconduct by the court that's related. There's never been a filing by Monsanto that tries to relate specifically any of this $487,000 to these three episodes. There's one deposition, two subpoenas, a review of some records, and 600 pages of deposition, which have a few pages that relate to varied farming practices. And one of those varied farming practices is the reason this court reversed the district court in David 1. I'm going to stop now and reserve some time, I hope. Thank you. We'll keep as much as you have saved. Mr. Lanthier. Thank you, Your Honor. I'd like to be brief. May it please the court, I'm Greg Lanthier, arguing on behalf of Plaintiffs Not Police Monsanto. The first thing I'd like to do is address what I think is a misunderstanding about the relationship between the law of the case doctrine and the mandate rule. The law of the case doctrine and the mandate rule are corollaries of each other, so that if Mr. David is correct, and we don't think that he is, that there's been a stark change in the factual circumstances in light of the reduced damages award. If that would operate, which it would as a exception to the law of the case doctrine, it's also a recognized exception to the mandate rule. So there's not this situation where the district court was powerless to change a result that it knew was faulty because the facts had changed. It's no different than if between the time of the mandate issuing and the district court considering the case on remand, some intervening change in law had come down from the Supreme Court. Obviously in that case, the district court can apply the intervening change in law. What does our mandate say in this case? Your mandate remands to the district court to reconsider the damages award. And do you have the language of the mandate? Oh sure, your honor. The mandate in this case states. Did you put it in the appendix? Your honor, I believe it was in the opinion at page 1017. If there was a separate mandate, then I do not believe that's in the appendix. The mandate is separate from an opinion, isn't it? Your honor, I believe that is correct. But you are correct that it's not in the appendix as far as I'm aware. Because I believe our mandate, the actual document just says vacate and remand or reverse and remand. It actually doesn't contain specific details. So if we're going to be very technical about this, you're looking at the mandate. The mandate doesn't contain a limitation or specific instructions on what could be done below. Your honor, that's correct in terms of the mandate just referring to remand and then the award of cost would be borne by each party on appeal separately. The case law and the mandate rule, to be fair I think, does make it clear that if the court of appeals has either expressly or necessarily ruled on an issue that that is part of the mandate. So I wouldn't want to suggest that the strict language of the mandate is what we're relying on here. But you are correct that I believe the specific mandate is the one sentence that typically comes out with the award. What about the reasonable relationship concept in Riverside? Sure, your honor. The reasonable relationship concept in Riverside says that in section 1988 proceedings, the relationship between the damages award and the amount of attorneys fees should be considered. Now there are three things, there are three distinctions between Riverside in this case that I think are central. One is that in Riverside and in every case that Mr. David has cited, there was not any injunctive component to the relief. So in those types of cases, the result obtained or the success of the prevailing parties is really defined by the amount of damages that were awarded. In this case, Mr. David argues that the injunction was worthless in this case. And so it was completely not valuable. It's not, you know, oftentimes an injunction is sort of priceless. Companies will pursue eagerly their competitor even without damages, but solely in pursuit of an injunction. But here the injunction concept does seem to be a little bit weak in terms of what its value really is against a single farmer. Your Honor, I don't think I could disagree strongly enough that the injunction in this case is extremely important to Monsanto. As you know, and as this court has recognized on multiple occasions, this is a technology that multiplies itself every growing season by a factor of 25 to 50. I think there's no question that had Monsanto not obtained a finding of willful infringement in this case, or at least infringement, and there had been no injunction, Mr. David certainly would have felt free to continue pursuits of... Suppose there was no injunction, though. Suppose there was simply the finding of infringement and no injunction. Then what? Is this case then like Riverside, such that an $80,000 damage award wouldn't justify $400-and-some-thousand in attorney's fees? No, Your Honor. I think even if we assume away the injunction, which I don't think we can, and be fair to the district court's decision here, but even if you assume away the injunction, another significant distinction from Riverside in every other case that's been relied on by Mr. David is, in none of those cases did you have conduct by the losing party that was found to have increased the amount of fees for the prevailing party. So I don't think, for example, in Justice Rehnquist's hypothetical in dissent in Riverside, where he says, if you have a breach of contract case worth $10,000, you couldn't justify $25,000 in fees, that that hypothetical accounts for the idea that if the losing party had conducted itself in a way during litigation that caused those fees to increase, that it would come out the same way, Your Honor. But the Riverside case also suggests that the fees should be measured against not just the dollar amount, but the extent of success that the plaintiff has achieved. And in this case, you received only $80,000 in fees, having requested vastly more than that. So why wouldn't we view this as a case in which, while you won, you didn't win anywhere near what you were asking for, and perhaps you shouldn't have spent $400,000 in attorney's fees on a case like that? Riverside certainly gives the suggestion that the extent of the win ought to be taken into account. Your Honor, it does suggest that I think there are two points there. One is, tracing back in what that means, the extent of the success, that typically refers to the case where one but not all of the claims that were brought were succeeded upon. So there's a recognition in that context that you can't award fees for causes of action you brought but lost. Secondly, Your Honor, I think we can't ignore the value of the permanent injunction here to Monsanto. So that even though the damages award was $89,000, the value of that injunction is truly immeasurable to Monsanto. And one thing that I didn't get to mention before in response to your earlier question is that in this case, if Mr. David were not enjoined and Monsanto were required the next time he willfully infringes its patent to bring another lawsuit, it has to file another complaint to get assigned to another judge. The time it would take even to get to a scheduling conference or to a point where it could get a temporary injunction or a preliminary injunction would be far in excess of what it has now, which is a permanent injunction in order against Mr. David. If Monsanto has a good belief that he is violating that injunction, it can return to the same judge. That judge knows the facts. That judge can assess whether there has been a violation, and if so, take the necessary steps to remedy it. Mr. Lanthier, I'd like to explore with you very briefly what is it, the extent to which we may have already addressed this issue the last time this case was here. In that case, Mr. David did argue that the amount of the attorney fee award didn't bear a reasonable relation to the result achieved. And we rejected that. And we rejected that considering the record before us at the time, which showed a range of planting rates, extending from three quarters of a unit, 37 and a half pounds, to one and a half units, 75 pounds. And we remarked that, you know, that was a range within which the district court should reassess the matter on remand. And the district court ultimately did, of course, and selected, I think, one unit of 50 pounds as the proper rate. That suggests to me that this issue of the reasonable relation between the attorney fee award and the result achieved has already been addressed. Where is the flaw in that conclusion, if there is? Your Honor, we do not believe there's any flaw in that conclusion. I think the relevant paragraph from the relevant two paragraphs are on 1016 and 1017 of this court's prior ruling. And specifically, the court at page 516 F3rd 1016 sets forth Mr. David's four arguments. And then at the paragraph that bridges 1016 to 1017 addresses them. The very final clause of that paragraph specifically finds that there was no abuse, that the awarding of attorney's fees was within the discretion of the district court. That's not, Your Honor, counsel, it's not a finding that it shouldn't bear a reasonable relation necessarily, right? Because in that case, damages were over $200,000 at that point. And the attorney's fees didn't look quite as out of proportion as they do now. Well, Your Honor, respectfully, I think the only argument that Mr. David raised during the first appeal that the attorney fees award was an abuse of discretion was that it didn't bear a reasonable relation and that the district court had failed to take into account the proportionality of the award to the attorneys, of the Penn State damages award to the attorney's fees. So, I do think that the court directly addressed that issue. And I also believe, Your Honor- They don't have to bear a reasonable relationship? I think directly addressed that it was not an abuse of discretion for the district court to conduct the analysis in the way it did. Was it an abuse, well, no, did we validate his methodology or did we decide whether his outcome was proper? The court found that there was no abuse of discretion in the district court's decision. Right. That decision did not specifically take into account some weighing of the compensatory damages award to the attorney's fees award. Your Honor, I'm not going to overstate and say that there's some line in this opinion that specifically states there is no requirement. And frankly, Your Honor, I think that this court has, on many occasions, set forth the factors that it does consider to be relevant to the reasonableness analysis. It hasn't specifically identified the proportionality, but it's left open that there are many factors the district court could consider. In this case, the district court was never asked to consider the relationship between the attorney's fees and the compensatory damages award. You may have to remand, or remand. I'll remand, Your Honor, yes. What we think it would be, we do not think that this case ought to be remanded for the reasons we set forth in our brief, but in particular, Your Honor, this is a case of willful infringement, meaning that the case was caused by a willful tort committed by Mr. David. It's a case where there was pre-litigation misconduct. There was conduct during litigation that the district court found to result in uncredible testimony and that the district court discredited. And we think that given the totality of the circumstances in this case, given all that conduct, given the willful nature of the infringement, that there is no abusive discretion in the district court's finding, particularly when coupled with the injunctive relief that Monsanto obtained. If there are no further questions, I don't think I have anything else for the court. Thank you, Mr. Lantier. Mr. Johnson has some rebuttal time. Thank you, Your Honor. The day that Monsanto, when Monsanto filed this suit in April of 2004, they got a temporary injunction from the court. This injunction is, the value of this injunction against a farmer who's had more than $487,000 of legal fees thrown at him over a couple of years. Talk about somebody that is afraid of getting sued. He doesn't need any injunction, never did need an injunction. Doesn't the injunction have sort of an interorum value? These are the other potential infringers, and is that relevant here? It's relevant to Monsanto. Yes, it is, because the whole point, the only reason that Monsanto throws these horrendous legal fees into these cases, the trial bill for Monsanto for seven people for that month was $147,000. My bill to Laura and David was $25,000. The only reason they do it is because it's their business plan. Why should Laura and David finance Monsanto's business plan? If they don't get their fees back in this case, they're going to do the same thing in the next case they did in this case. They're going to spend everything they can to build a circumstantial case if the farmer maintains his innocence, as Laura and David has from the beginning, as Laura and David does today. It's going to happen again. This has nothing to do, it does have to do with deterrence, but it's all to Monsanto's private benefit. It's not for the public benefit. Thank you. Unless you have any more questions. Thank you, Mr. Johnson. The case will be taken under advisement.